**FILED**

MAR 0 6 2009

CLERK

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH DAKOTA
### SOUTHERN DIVISION

| | |
|---|---|
| MARIA CORAZON MARGALLO-GAN, | |
| Plaintiff, | CIV _09-4026_ |
| vs. | **COMPLAINT** |
| | **AND** |
| ROBERT FARRELL, ANGELITA | **DEMAND FOR JURY TRIAL** |
| FARRELL, AND CHOICE HOTELS | |
| INTERNATIONAL, INC., | |
| Defendants. | |

COMES NOW the Plaintiff, Maria Corazon Margallo-Gan, by and through her

attorneys of record, and for her Complaint against Defendants, hereby states and

alleges as follows:

### PARTIES

#### 1.

Plaintiff Maria Corazon Margallo-Gan (Maria) is a current resident of Parañaque,

Metro-Manila, Philippines and a citizen of the Philippines and whose request for a

temporary sojourn in the United States to institute this civil action has been granted by

the United States consular office in Manila, Philippines.

#### 2.

Upon information and belief, Defendants Robert Farrell and Angelita Farrell,

husband and wife (the Farrells), have been residents of Mitchell, South Dakota, at all

times relevant to the claims in this action, and the Farrells are currently incarcerated by the

United States Bureau of Prisons.

3.

Defendant Choice Hotels International, Inc. (Defendant Choice Hotels), a Delaware

corporation, with its principal place of business in Wilmington, Delaware, is licensed to do

business and conducts business in the State of South Dakota. As a franchisor/licensor,

Defendant Choice Hotels issues franchises/licenses to various individuals and entities as

franchisees/licensees to own and operate hotels under various brand names, including

the Comfort Inn Hotels and Comfort Inn & Suites.

4.

Choice entered into franchise/license agreement with the Farrells that allowed the

Farrells to operate a Comfort Inn & Suites Hotel in Oacoma, South Dakota. Said

franchise/license agreement was in effect at the time of the occurrence of the events

relevant to this Complaint.

## JURISDICTION

5.

This action arises from 18 U.S.C. § 1589 et seq., which codifies part of the

Trafficking Victims Protection Reauthorization Act of 2003, in accordance with the

implied right of civil action under the Thirteenth Amendment of the United States

Constitution and its enabling statute, 18 U.S.C. § 1584, in conjunction with the Alien

Tort Claims Act, 28 U.S.C. § 1350.

6.

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because

this civil action arises under the laws of the United States. This action also involves

state-law claims against Defendants that the claims form part of the same case or

controversy under Article III of the United States Constitution and pursuant to 28 U.S.C § 1637, as they arise from the same operative facts from which the federal claims arise.

7.

Pursuant to 28 U.S.C. § 1391, venue in this District Court is proper because Defendants Robert and Angelita Farrell are residents of this District and a substantial part of the events, acts, and omissions giving rise to this action occurred in this District.

## GENERAL ALLEGATIONS

8.

In 2005, Defendants Robert and Angelita Farrell induced Plaintiff and eight other Filipino workers to agree to travel to the United States under the promise of employment at the Farrells' hotel, the Comfort Inn & Suites at Oacoma, South Dakota (hereinafter "Comfort Inn").

9.

Defendant Farrells promised Plaintiff a housekeeping position at the Comfort Inn, working under fair and advantageous working conditions at the lawful hourly wage paying significantly more than Plaintiff could earn in the Philippines. The Farrells also promised Plaintiff that they would provide her room and board in the United States, and that they would be responsible for her transportation and related expenses from the Philippines to the site of employment in South Dakota.

10.

Based on the inducement and promises of employment by Defendant Farrells, Plaintiff agreed to leave her minor child, family, and friends to travel or emigrate to the United States

11.

Defendant Robert and Angelita Farrell were actually engaged in trafficking Plaintiff and coworkers into servitude; the Farrells not only disregarded or ignored the terms of employment of Plaintiff and co-workers by paying them less than promised and violating other stipulations of the employment agreement but, worse, they held the workers in debt servitude or made them work under condition of peonage and or involuntary servitude.

12.

In furtherance of their scheme, Defendants Robert and Angelita Farrell travelled to Manila, the capitol city of the Philippines, to meet Plaintiff and escort her, along with the other eight workers, to the United States.

13.

Upon being transported to the United States, or to the Comfort Inn at Oacoma, South Dakota, Defendant Robert and Angelita Farrell immediately confiscated the passports of Plaintiff and her coworkers.  The Farrells proceeded to hold Plaintiff and her coworkers captive by restricting their movements and personal freedom, keeping them closely guarded, monitoring their interactions with one another, forbidding their contact with the community, controlling their use of telephones, and strictly watching their every activity.

14.

Contrary to their promise of adequate housing in the United States, Defendants Robert and Angelita Farrell provided to Plaintiff and her coworkers, although basically strangers to one another, a small two-bedroom apartment, with a kitchen/living room

and one bathroom, in Chamberlain, South Dakota. For those accommodations, the Farrells charged each worker rent of $150.00 per month.

15.

Defendants Robert and Angelita Farrell ordered Plaintiff and her coworkers to stay in their apartment when they were not at work, to refrain from speaking with anyone but themselves, and to refuse rides back and forth from their apartment to work. Defendant Angelita Farrell frequently checked or called the apartment to make sure that the workers were isolated and confined to their apartment when not working.

16.

Unilaterally altering the terms of Plaintiff's employment after Plaintiff's arrival in South Dakota, Defendants Robert and Angelita Farrell demanded that Plaintiff repay a large debt that she allegedly owed to them, including the cost of her airfare to the United States and related expenses. Defendants Robert and Angelita Farrell likewise demanded payment of similar debts from Plaintiff's coworkers.

17.

In Plaintiff's case, she was surprised to learn during her first week of work that she was already indebted to the Defendants Robert and Angelita Farrell in the amount of $2,645.42 apparently representing, among other things, airfare of approximately $1,300.00 and processing fee of $1,200.00, which was contrary to the Farrells' prior assurance to Plaintiff in the Philippines that the processing fee would be prorated among the nine workers. The Farrells forced Plaintiff to sign a contract acknowledging the existence of this debt.

18.

To generate other income for the purpose of paying their alleged debts, Defendants Robert and Angelita Farrell offered the services of Plaintiff and her coworkers to other businesses and forced Plaintiff and her coworkers to perform work other than housekeeping at Comfort Inn and at extended hours of up to 16 continuous hours per day, in violation of the terms of their employment.   In menacing manner, Defendants Robert and Angelita Farrell regularly reminded Plaintiff and her coworkers of their alleged debts and threatened to harm or report Plaintiff and her coworkers to authorities if they did not obey.

19.

During after-work rest periods or during the night, Defendants Robert and Angelita Farrell, on many occasions, demanded the attendance of Plaintiff and her coworkers in mandatory, unpaid meetings lasting for hours, during which the Farrells berated Plaintiff and her coworkers. At one of those meetings, the Farrells disclosed the real terms of Plaintiff's employment contract, stating that rather than being paid above the minimum wage, Plaintiff would be required to spend one hour cleaning each room, for which she would receive $3.00 per room and that Plaintiff that she would not be entitled to overtime compensation.

20.

During the mandatory staff meetings, Defendants Robert and Angelita Farrell threatened that Plaintiff and her coworkers would be sent home in "balikbayan boxes" if they tried to fight or go against the Farrells, suggesting that they would be shipped back to the Philippines boxed in coffins.

21.

After the unpaid, mandatory staff meetings, Plaintiff and her coworkers were expected to report for their regular working shifts regardless of the time in the early morning that the late night meetings were concluded.

22.

In addition to her job duties at the Comfort Inn, Plaintiff was required by Defendants Robert and Angelita Farrell to work another job so as to make larger payments to her supposed debt. The Farrells secured employment for Plaintiff at the Burger King at Oacoma, where Plaintiff worked a full eight-hour shift after her eight-hour shift at the hotel. To further Plaintiff's isolation and intimidation, the Farrells made Plaintiff walk between her jobs and her residence late at night and in below-zero temperatures and blizzard conditions across an interstate highway without any proper identification.

23.

For the alleged repayment of Plaintiff's debts, Defendants Robert and Angelita Farrell required Plaintiff to endorse her paychecks—both from the hotel and from her second job—and give them to the Farrells for deposit in the bank account that the Farrells arranged for Plaintiff. The Farrells maintained control of that account, and through coercion, intimidation, and threats of violence, the Farrells retained approximately eighty percent (80%) of Plaintiff's wages as payment for her alleged debt.

24.

The work schedule forced upon Plaintiff by Defendants Robert and Angelita Farrell or people acting on their behalf deprived Plaintiff of adequate rest and sleep in

order to further intimidate, coerce, and exploit Plaintiff and her vulnerable nature in a

foreign country.  For example, the hotel manager would suddenly barge into the workers'

apartment in the middle of the night and verbally abuse them in order to intentionally

disturb them.

25.

Defendants Robert and Angelita Farrell also subjected Plaintiff and her

coworkers to horrible living conditions.  On more than one occasion, Defendant Robert

Farrell barged into the workers' apartment late in the evening hauling a couple of slain

deer.  Defendant Robert Farrell dumped the bloody, dead animals on the floor and

ordered one of Plaintiff's co-workers to cut the meat into pieces for their food supply,

obviously intending to instill fear and distress in Plaintiff and her coworkers.  The

maltreatments and harassments only served to further aggravate the Plaintiff's already

unbearable working conditions, which increasingly rendered her physically and mentally

exhausted.

26.

To further "enable" Plaintiff and coworkers repay their inflated, alleged debts,

Defendant Farrells also arranged work for Plaintiff and her coworkers at other businesses

including the Hampton Inn and Prairie Homes Assisted Living in Mitchell, South Dakota,

where Defendant Angelita Farrell kept close watch on the actions of Plaintiff so as to

continue the intimidation, harassment, isolation, and exploitation of Plaintiff.

27.

Defendants Robert and Angelita Farrell exploited Plaintiff's vulnerability as a

perfect stranger in a foreign land in order to humiliate and torment Plaintiff. The Farrells

made Plaintiff and coworkers suffer dreadful working conditions, physical and emotional abuse, and the loss of personal freedom.

28.

The foregoing harrowing episodes, the betrayal of trust, and the exploitation suffered by Plaintiff at the hands of the Defendants Robert and Angelita Farrell severely traumatized and afflicted Plaintiff with serious and substantial physical distress and mental anguish.  By February 2006, Plaintiff weighed merely 90 pounds, down from her previous weight of 140 pounds.

29.

In February 2006, Plaintiff and her coworkers, pursuant to immigration requirements, were required to return to the Philippines.  It was only at the Sioux Falls airport that Plaintiff's passport was returned to her by Defendant Angelita Farrell, who accompanied the Plaintiff and her coworkers back to the Philippines.

30.

Upon arriving in the Phillipines, Defendant Angelita Farrells continued the Defendants' scheme by making continued threats against Plaintiff and her coworkers. Angelita Farrell reminded Plaintiff and her coworkers of their alleged outstanding debts, told them their only option was to renew their travel papers and continue working for the Farrells in the United States, and threated that they would be prosecuted if they failed to repay their debts in full.

31.

Upon arriving in the Philippines, the Filipino consulate confronted Defendant Angelita Farrell about the questionable documentation she presented to the Filipino government,

32.

Not wanting to be part of any fraudulent documentation scheme and risk incurring liability with the Filipino government, Plaintiff sought to end her relationship with the Farrells. In response, Angelita Farrell threatened to take action against Plaintiff and warned Plaintiff that she would suffer severe consequences because of her resistance and disobedience.

33.

Plaintiff continued to resist involvement in the fraudulent documentation scheme administered by Defendant Angelita Farrell, but due to the threats made by Angelita upon returning to the Philippines and the prior intimidation and exploitation suffered in the United States, Plaintiff continued to suffer extreme fear that she would be subjected to further abuse and retribution inflicted by the Farrells.

34.

On April 11, 2006, after Defendant Angelita Farrell and some of Plaintiffs' coworkers returned to the United States, Plaintiff developed the courage to come forward and report the abuse inflicted by Defendants Robert and Angelita Farrell. Plaintiff provided critical information to the U.S. authorities about the activities of Defendant Farrells by initiating a complaint, for herself and on behalf of her coworkers, with the U.S. Embassy in Manila.

35.

Upon receiving emails from one of her coworkers who returned to South Dakota with Defendant Angelita Farrell, Plaintiff on May 28, 2006 corresponded again via email with the U.S. Embassy in Manila informing them of the ongoing abuse suffered by the Filipino workers at the hands of Defendant Farrells, following up on Plaintiff's complaint of April 11, 2006, and demanding for an immediate investigation.

36.

Sometime in June 2006, Plaintiff was informed by the U.S. Department of Homeland Security in Manila that an investigation of her complaint, as well as one later filed by a coworker who had returned to the Philippines, had been commenced.

37.

In the following months, a representative of U.S. Homeland Security advised Plaintiff that based on the investigation prompted by her complaint, Homeland Security in South Dakota obtained warrants to search the Comfort Inn operated by Defendants Robert and Angelita Farrell in Oacoma, South Dakota, and that upon service of the warrant, evidence valuable and relevant to the investigation of the Farrells' activities was uncovered.

38.

Defendant Farrells were thereupon indicted and on November 8, 2007, a federal jury in Aberdeen, South Dakota, Defendants Robert and Angelita Farrell were convicted of nine charges, including violations of 18 U.S.C. § 1581 (peonage), and 18 U.S.0 § 1592 (a) (1) & (2) (documented servitude) for their treatment of Plaintiff and co-workers. *See United States v. Robert Farrell and Angelita Farrell*, CR 07-30019 (D.S.D.).

39.

Plaintiff was a victim of Defendants Robert and Angelita Farrells' violations of 18 U.S.C. §§ 1581 and 1592 and was also a victim of the Farrells' violations of 18 U.S.C. §§ 1589 (forced labor) and 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor).

40.

Defendant Robert Farrell was sentenced in Federal Court on February 22, 2008, to 50 months of imprisonment, three years of supervised release, a $15,000 fine and a $900 special assessment.

41.

Defendant Angelita Farrell was sentenced in Federal Court on February 22, 2008, to 36 months of imprisonment, three years of supervised release, a $15,000 fine and a $900 special assessment.

42.

Plaintiff, as a victim of the abusive, coercive, and criminal activity of Defendants Robert and Angelita Farrell, has yet to obtain vindication of the pain, suffering, injuries, and abuses committed against her by the Farrells.

43.

Upon information and belief, Defendant Choice was aware of the operations at the Oacoma Comfort Inn & Suites. Choice conducted numerous inspections of the hotel, exercised control over those operations, and chose to do nothing about Plaintiff's captivity.

## COUNT I
## PEONAGE, SLAVERY, FORCED LABOR, AND TRAFFICKING IN PERSONS

44.

Plaintiff realleges paragraphs 1-43 of this Complaint and hereby incorporates them by reference as if fully set forth herein.

45.

Defendants Robert and Angelita Farrell were convicted of violations of 18 U.S.C. §§ 1581 and 1592, which criminal actions have been finally adjudicated in this Court.

46.

Defendants Robert and Angelita Farrell held Plaintiff to a condition of peonage in violation of 18 U.S.C. § 1581.

47.

Defendants Robert and Angelita Farrell violated 18 U.S.C. § 1592 (a)(1) & (a)(2) by knowingly concealing, removing, confiscating, and possessing Plaintiff's passport in the course of violating and intending to violate 18 U.S.C. §§ 1581, 1589 and 1590.

48.

Plaintiff is also a victim of Defendants Robert and Angelita Farrells' violations of 18 U.S.C. §§ 1589 (forced labor) and 1590 (trafficking with respect to peonage, slavery, involuntary servitude or forced labor), the Thirteenth Amendment of the United States Constitution (constitutional prohibition against slavery and involuntary servitude) in conjunction with 18 U.S.C. § 1584, and the Alien Tort Claims Act (for torts of slavery and human rights infringement committed in violation of universally accepted norms of international law, the law of nations or treaties entered into by the United States).

49.

Plaintiff has suffered considerable damages, including lost wages, physical and mental suffering, and loss of human dignity as a result of Defendant Robert and Angelita Farrell's conduct in violation of 18 U.S.C. §§ 1581 (peonage), 1592 (document servitude), 1589 (forced labor) or 1590 (trafficking with respect to peonage, slavery, involuntary servitude or forced labor) as well as the Thirteen Amendment of U.S. Constitution (slavery and involuntary servitude) and slavery and human rights abuses under the Alien Torts Claims Act (ATCA) for which Plaintiff is entitled to recover damages from Defendants pursuant to 18 U.S.C. § 1595(a), 18 U.S.C. § 1584 and ATCA.

50.

The conduct of the Defendants Robert and Angelita Farrell in this case constitutes oppression, fraud, and malice, actual and presumed, thereby rendering Defendants Robert and Angelita Farrell liable for punitive damages in an amount sufficient to punish them and hold them accountable for their wrongful conduct and to deter such conduct in the future.

51.

Plaintiff, having incurred reasonable attorney's fees and costs in pursuing this action, is entitled to recover those expenditures from Defendants pursuant to 18 U.S.C. § 1595(a).

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52.

Plaintiff realleges paragraphs 1-51 of this Complaint and incorporates them by reference as if fully set forth herein.

53.

Defendants Robert and Angelita Farrell engaged in extreme and outrageous conduct in the recruitment, employment, compensation and treatment of Plaintiff that exceeded the bounds of decency in civilized nations and societies.

54.

Defendants Robert and Angelita Farrell intended to cause Plaintiff severe emotional distress or recklessly caused the Plaintiff severe emotional distress.

55.

Defendants Robert and Angelita Farrell's conduct, in fact, caused Plaintiff to suffer severe emotional distress.

56.

Because of the extreme and outrageous conduct of Defendants Robert and Angelita Farrell, Plaintiff suffered extreme disabling emotional responses.

57.

Defendants are liable to Plaintiff for compensatory damages, including mental pain and suffering, as a result of Defendants' conduct described above.

58.

The conduct of the Defendants Robert and Angelita Farrell in this case constitutes oppression, fraud, and malice, actual and presumed, thereby rendering Defendants Robert and Angelita Farrell liable for punitive damages in an amount sufficient to punish them and hold them accountable for their wrongful conduct and to deter such conduct in the future.

### COUNT III
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

59.

Plaintiff states and realleges paragraphs 1-58 of this Complaint and hereby incorporates them by reference as if fully set forth herein.

60.

Defendants Robert and Angelita Farrell owed a duty to Plaintiff to provide safe and reasonable working conditions, to comply with all applicable labor laws, and to compensate her appropriately for the work performed by Plaintiff.

61.

Defendants Robert and Angelita Farrell failed to provide Plaintiff safe and reasonable working conditions, failed to comply with all applicable labor laws, and failed to compensate Plaintiff appropriately for the work she performed.

62.

As a result of the failure of Defendants Robert and Angelita Farrell to perform their duties to Plaintiff, as described above, Plaintiff suffered emotional distress.

63.

Defendants Robert and Angelita Farrells' conduct was a legal cause of Plaintiff's emotional distress.

64.

Plaintiff suffered physical manifestations of the emotional distress caused by the conduct of Defendants Robert and Angelita Farrell.

65.

Defendants Robert and Angelita Farrell are liable to Plaintiff for compensatory damages, including mental pain and suffering, for the above conduct.

## COUNT IV
## ASSAULT

66.

Plaintiff realleges paragraphs 1-65 of this Complaint and hereby incorporates them by reference as if fully set forth herein.

67.

Defendants Robert and Angelita Farrell intended to cause harmful or offensive physical contact with the Plaintiff, or an imminent apprehension of such contact.

68.

Defendants Robert and Angelita Farrell's conduct caused Plaintiff to fear such contact would immediately occur.

69.

Due to the fear caused by the conduct of Defendants Robert and Angelita Farrell, Plaintiff suffered injury and is entitled to recover compensatory damages, including mental pain and suffering, from Defendants Robert and Angelita Farrell.

70.

The conduct of the Defendants Robert and Angelita Farrell in this case constitutes oppression, fraud, and malice, actual and presumed, and therefore the Defendants Robert and Angelita Farrell are liable for punitive damages in an amount sufficient enough to punish them and hold them accountable for their wrongful conduct and to deter such conduct in the future.

## COUNT V
## CONSTRUCTIVE/WRONGFUL DISCHARGE

71.

Plaintiff realleges paragraphs 1-70 of this Complaint and hereby incorporates them by reference as is fully set forth herein.

72.

Defendants Robert and Angelita Farrell subjected Plaintiff to dreadful working conditions, physical and emotional abuse, and the loss of personal freedom in order to exploit Plaintiff's vulnerability as a perfect stranger in a foreign land for their economic benefit.

73.

Upon returning to the Philippines in 2006, Plaintiff refused to participate in the fraudulent and unlawful documentation scheme operated by Defendants Robert and Angelita Farrell.

74.

Because Plaintiff refused to participate in the Farrells' schemes of exploitation and fraudulent documentation, Plaintiff could not return to the United States to work.

75.

Plaintiff was terminated, inter alia, for her refusal to commit a criminal or unlawful act and for her refusal to continue participation in a criminal or unlawful scheme.

76.

Plaintiff's termination contravenes a clear mandate of South Dakota public policy.

## COUNT VI
## RESPONDEAT SUPERIOR-AGENCY LIABILITY

77.

Plaintiff realleges paragraphs 1-76 of this Complaint and hereby incorporates them by reference as is fully set forth herein.

78.

In 2005 through 2006, the Farrells were parties to a franchise agreement with Defendant Choice that allowed the Farrells to operate a Comfort Inn & Suites hotel in Oacoma, South Dakota.

79.

Defendant Choice Hotels, as the franchisor that entered into a franchise agreement with the Farrells, had sufficient control over the actions of the Farrells, its franchisees, in owing and operating the Comfort Inn & Suites hotel franchise in Oacoma, South Dakota, that the Farrells were acting within the scope of their actual, express, apparent, and/or implied authority, as well as acting within the scope of their employment duties.  Such conduct was reasonably foreseeable, and therefore, imputable to Defendant Choice Hotels, under the doctrine of respondeat superior.

80.

Pursuant to the doctrine of respondeat superior, Defendant Choice Hotels is responsible for negligent conduct of Robert and Angelita Farrell.

81.

Under South Dakota law, Defendant Choice Hotels, as franchisor, is liable to plaintiff for the intentional torts of the Farrells, as franchisees, against Plaintiff in operating the Comfort Inn & Suites hotel in Oacoma, South Dakota.

82.

Plaintiff was injured as a result of Defendants Robert and Angelita Farrell's conduct, for which Defendant Choice hotels is liable to Plaintiff for damages.

## COUNT VII
## NEGLIGENCE - DEFENDANT CHOICE HOTELS

83.

Plaintiff realleges paragraphs 1-82 of this Complaint and hereby incorporates them by reference as is fully set forth herein.

84.

Defendant Choice Hotels exercised sufficient control over its franchisees, Robert and Angelita Farrell and Choice Hotels owed the following non-exclusive duties to employees of its franchisees: to exercise reasonable care in selecting individuals with whom to enter into franchise agreements; to provide safe working conditions; and to supervise its franchisees' compliance with all labor laws in the United States.

85.

Defendant Choice Hotels failed to perform its duties to employees of Choice's franchisees.

86.

Plaintiff was injured as a result of Defendant Choice Hotel's failure to perform its duties to employees of its franchisees, Robert and Angelita Farrell, and is entitled to recover damages from Defendant Choice Hotels for such injuries.

WHEREFORE, Plaintiff respectfully prays for the following against the Defendants:

(1)   For compensatory, general, and special damages in an amount to be determined by the trier of fact to compensate Plaintiff for all injuries sustained as a result of the conduct of Defendants;

(2)   For punitive damages in an amount to be determined by the trier of fact;

(3)   For Plaintiff's cost and disbursements herein;

(4)   For prejudgment and post judgment interest; and

(5)   For such further relief as the Court deems proper.

Dated this _6ᵗʰ_ day of March, 2009.

MURPHY, GOLDAMMER
& PRENDERGAST, L.L.P.


Michael L. Luce
101 North Phillips Avenue
Wells Fargo Building, Suite 402
Post Office Box 1535
Sioux Falls, SD 57101-1535
Telephone: (605) 331-2975
Facsimile: (605) 331-6473
E-Mail: mike@mgplawfirm.com
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff Maria Corazon Margallo-Gan demands trial by jury on all issues of fact.

MURPHY, GOLDAMMER
& PRENDERGAST, L.L.P.

Michael L. Luce
101 North Phillips Avenue
Wells Fargo Building, Suite 402
Post Office Box 1535
Sioux Falls, SD 57101-1535
Telephone: (605) 331-2975
Facsimile: (605) 331-6473
E-Mail: mike@mgplawfirm.com
*Attorney for Plaintiff*